UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

GERTRUDE WALKER,

Debtor.

Case No. 04-23123-MDM

Chapter 13

_____

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO CLAIM NO. 6
_____

The debtor filed a chapter 13 petition on March 10, 2004, and the debtor's plan of reorganization was confirmed May 25, 2004. The confirmed plan provided the following:

> The debtor will pay $160.00 monthly directly to the trustee for a period of 36 months. Current payments to the first mortgage holder on homestead shall be made outside the plan, all past due payments to be included in the plan of arrangement. Secured claim of City of Milwaukee will not be paid by trustee. Unsecured creditors shall be paid not less than 1 % of their allowed claims. Upon confirmation of the plan, all property of the estate shall remain under the jurisdiction of the Court until discharged or dismissal of the case. Debtor reserves the right to object to any claim before or after confirmation. All claims filed after the bar dates will be disallowed. Trustee shall pay Attorney for debtor not less than $1000.00[.]

Chapter 13 Plan dated March 10, 2004. On her schedules, the debtor listed the City of Milwaukee as an unsecured nonpriority creditor with a claim for utility service in the amount of $1,093.86. Her Schedule J of monthly expenses shows $35 per month for water and sewer charges.

On April 22, 2005, the debtor filed a proof of claim on behalf of the City of Milwaukee for unpaid municipal services[1] in the amount of $1,570.74 as an unsecured priority claim (Proof of Claim No. 6). The chapter 13 trustee objected to the priority classification of the claim. The

---

[1] The invoice from the City of Milwaukee attached to the claim filed by the debtor includes charges for water service, water usage, MMSD sewer treatment, city sewer maintenance, and solid (garbage) waste removal.

city objected to the proof of claim and responded to the trustee's objection, asserting lack of notice, as is required by Fed. R. Bankr. P. 3004, lack of good faith, and abuse of the bankruptcy process as an attempt to thwart the city from collecting its utility charges.  In its brief, the city asserts that its claim is entitled to both priority and secured status under state law.  The trustee and city filed briefs in support of their respective positions.

The billing statement attached to the proof of claim indicates current charges for the period of December 6, 2004, through March 9, 2005, in the amount of $618.62, and a balance forward of $952.12.  The record does not disclose whether any of this $952.12 is prepetition or postpetition, but if current charges are actually over $200 per month, the entire amount listed on the proof of claim appears to have been incurred postpetition.  If so, there is no prepetition claim for the $1,093.86 shown on the debtor's schedules and the plan proposes not to pay that obligation, if it is secured.  The court will address only the issue of the postpetition claim.

## ARGUMENTS

The city just wants to get paid – the sooner, the better, no matter the reason.  Noting that its statutory lien rights are perfected under Wisconsin law when the charges are incurred, the city asserts the debt should be afforded priority and secured status.  *See* Wis. Stats. §§ 62.69(2)(f), 66.0809(3).

The debtor reasons that the postpetition sewer and water charges are priority obligations because they are necessary for the debtor's performance under the plan. *See* 11 U.S.C. § 1305.

The trustee argues no part of the postpetition obligation could have been properly perfected on the date of the filing of the petition.  Additionally, as a matter of policy, if the debtor has a right to refuse to pay postpetition utility bills and to have them treated as priority without

2

prior permission from the trustee, there would neither be any distribution for unsecured creditors nor any need for the debtor to make postpetition utility payments directly while a chapter 13 plan was pending. This would have the practical effect of shifting one of the debtor's current expenses (and why not others?) from expenses that reduce disposable income to an expense that reduces payments to allowable claimants under the plan.

This court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This decision constitutes the court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## DISCUSSION

The status of a postpetition claim under chapter 13 is somewhat ambiguous. "Sometimes a debt that arises after the petition in a Chapter 13 case will qualify as a postpetition claim under § 1305; sometimes it will qualify as an administrative expense under § 503; sometimes it will qualify as neither; maybe it can be both." 4 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3$^d$ Ed. § 302.1.

Section 1305(b) creates, in effect, a legal fiction. Although in reality the city's claim arose postpetition, it may be allowed under section 502 as though it arose prepetition. Section 1305 provides:

> (a) A proof of claim may be filed by any entity that holds a claim against the debtor –
>     (1) for taxes that become payable to a governmental unit while the case is pending; or
>     (2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.
> (b) Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a),

3

502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.
(c) A claim filed under subsection (a)(2) of this section shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained.

11 U.S.C. § 1305.

This section only allows for the filing of two types of claims, claims for taxes and for certain consumer debts. State law treats the city's claim like a tax, eventually. However, this claim is not yet a tax, since the procedure has not yet been completed to make it a tax. A water charge starts out as a statutory lien:

> All water rates for water furnished to any building or premises, and the cost of repairing meters, service pipes, stops or stop boxes, are a lien on the lot, part of lot or parcel of land on which the building or premises is located. If any water rates or bills for the repairing of meters, service pipes, stops or stop boxes remain unpaid on October 1, the unpaid rates or bills shall be certified to the city comptroller on or before November 1, and shall be placed by the comptroller upon the tax roll and collected in the same manner as other taxes on real estate are collected in the city. ...

Wis. Stat. § 62.69(2)(f). The lien is subsequently compiled on the tax roll:

> Except as provided in subs. (4) and (5), on October 15 in each year notice shall be given to the owner or occupant of all lots or parcels of real estate to which utility service has been furnished prior to October 1 by a public utility operated by a town, city or village and payment for which is owing and in arrears at the time of giving the notice. The department in charge of the utility shall furnish the treasurer with a list of the lots or parcels of real estate for which utility service charges are in arrears, and the notice shall be given by the treasurer, unless the governing body of the city, village or town authorizes notice to be given directly by the department. The notice shall be in writing and shall state the amount of arrears, including any penalty assessed pursuant to the rules of the utility; that unless the amount is paid by November 1 a penalty of 10% of the amount of arrears will be added; and that unless the arrears, with any added penalty, are paid by November 15, the arrears and penalty will be levied as a tax against the lot or parcel of real estate to which utility service was furnished and for which payment is delinquent. The notice may be served by delivery to either the owner or occupant personally, or by letter addressed to the owner or occupant at the post-office address of the lot or parcel of real estate. On November 16 the officer or department issuing the notice shall certify and file with the clerk a list of all lots or parcels of real estate, giving the legal description, for which

> notice of arrears was given and for which arrears remain unpaid, stating the amount of arrears and penalty. Each delinquent amount, including the penalty, becomes a lien upon the lot or parcel of real estate to which the utility service was furnished and payment for which is delinquent, and the clerk shall insert the delinquent amount and penalty as a tax against the lot or parcel of real estate. All proceedings in relation to the collection of general property taxes and to the return and sale of property for delinquent taxes apply to the tax if it is not paid within the time required by law for payment of taxes upon real estate. ...

Wis. Stat. § 66.0809(3).

Apparently this second step has not been completed (we have not seen a tax bill), so the debt is a secured claim, but not a tax.

Another way to qualify under 11 U.S.C. § 1305(a)(2) is as a consumer debt for property or services necessary for the debtor's performance under the plan. Unquestionably, water and sewer charges to the debtor's homestead would fall under the category of consumer debts. However, postpetition claims for consumer debts are further limited to debts incurred "for property or services necessary for the debtor's performance under the plan." 11 U.S.C. § 1305(a)(2). Whether the property or services rendered were necessary for the debtor's performance under the plan is a factual question, which must be examined on a case-by-case basis. At least one court has held that such necessary utility services qualifies. *See In re Bagby*, 218 B.R. 878 (Bankr.W.D.Tenn.1998) (holding that cash advances obtained to pay rent and utilities are debts necessary for the debtors' performance under the plan); *see also In re Leavell*, 190 B.R. 536, 541 (Bankr.E.D.Va.1995) (holding that a ring and a video cassette recorder are not property necessary for the debtor's performance under the plan).

When a postpetition proof of claim is filed under section 1305(a)(2), the claim is subject to objection by an interested party, as occurred here. 11 U.S.C. §§ 1305(b), 502(a). Section

5

Case 04-23123-mdm    Doc 48    Filed 10/19/05    Page 5 of 10

1305(c) contains one constraint on allowance of section 1305(a)(2) postpetition claims. A section 1305(a)(2) claim will "be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained." 11 U.S.C. § 1305(c). However, if obtaining approval of the trustee prior to incurring postpetition debt is impracticable, then the claim will be allowed without such approval. This may, indeed, be the hub of the trustee's argument. Not only did the debtor not receive approval from the trustee to make her postpetition water and sewer charges part of her plan payments, she included water charges in her current expenses, which evinces an intent to pay them directly, not through the plan. Furthermore, she expressly provided in her plan, "Secured claim of City of Milwaukee will not be paid by trustee." Since the water charge is a statutory secured claim, filing a claim on the city's behalf is contrary to the plan.

Of course, denial of the claim under section 1305(c) only prevents the claim from being paid under the plan, it does not discharge the debt. A postpetition claim disallowed under section 1305(c) will not be discharged, because 11 U.S.C. § 1328(a) states that a debt is only discharged if it is "provided for by the plan or disallowed under section 502." 11 U.S.C. § 1328(a). The postpetition creditor in such a situation is forced to await the discharge of the debtor or to seek relief from the automatic stay to pursue collection of the debt. *Cf. In re Wrigley*, 195 B.R. 914 (Bankr. E.D. Ark. 1996) (statute providing priority for allowed unsecured claims of governmental units for property taxes did not apply to county's claim against debtors, inasmuch as county's assessment of taxes upon debtors' real property created lien on that property under Arkansas law, making county secured creditor; county therefore had to look to collateral for payment of debt).

6

Case 04-23123-mdm    Doc 48    Filed 10/19/05    Page 6 of 10

Even if a claim is not disallowed under section 1305(c), it could be disallowed if it is not an administrative expense. Section 1305(b) places an additional constraint on allowance of section 1305(a)(2) postpetition claims, stating:

> Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 1305(b). The effect of deleting the language "as of the date of the filing of the petition" from section 502(b) and replacing it with the language "as of the date such claim arises," is to place the postpetition administrative creditor on the same footing as prepetition claimants of the same priority. *See* 11 U.S.C. §§ 502(b), 1305(b).

Are the debtor's personal sewer and water charges an administrative expense? *Cf. In re Farris*, 205 B.R. 461 (Bankr. E.D. Pa. 1997) (real property taxes, including water and sewer charges, were entitled to administrative expense priority). Section 503 provides in pertinent part:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
> > (1)(A) the actual, necessary costs and expenses of preserving the estate including wages, salaries, or commissions for services rendered after the commencement of the case;
> > (B) any tax –
> > > (i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title; or
> > > (ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and
> > (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph; ...

Case 04-23123-mdm    Doc 48    Filed 10/19/05    Page 7 of 10

11 U.S.C. § 503. The first requirement under this section, and a prerequisite for determining that something is an administrative expense, is that the obligee file a request for payment. "An application for payment of an administrative expense should not be labeled as a 'proof of claim.' An application for payment of an administrative expense is not properly asserted in a proof of claim, and the filing of a proof of claim is unnecessary to request payment of an administrative expense; the application for payment filed under section 503(a) is all that is required." 4 COLLIER ON BANKRUPTCY ¶ 503.02[1] (citing *NL Industries v. GHR Energy Corp.*, 940 F.2d 957 (5th Cir. 1991)). In the present case, the debtor filed the postpetition claim as a priority expense under 11 U.S.C. § 507(a)(8)[2], not as an administrative expense. The city did not explicitly claim administrative expense status, although it clearly would take the money any way it could get it.

A postpetition creditor of the debtor whose claim is of the type contemplated under section 1305(a)(2) is given a choice on whether or not to participate in the chapter 13 plan. Section 1305(a) is purely voluntary, stating that the creditor "may" file a claim in the debtor's bankruptcy case. 11 U.S.C. § 1305(a); *see also In re Glover*, 107 B.R. 579, 584 (Bankr. S.D. Ohio 1989). The majority of cases hold that a debtor may not file a proof of claim on behalf of a post-petition creditor. *See In re Smith*, 192 B.R. 712, 714 (Bankr. E.D. Tenn.1996); *In re Trentham*, 145 B.R. 564, 567 (Bankr. E.D. Tenn.1992); *In re Pritchett*, 55 B.R. 557, 559 (Bankr. W.D.Va. 1985). Thus, the debtor may not force a postpetition creditor to participate in the chapter 13 case. *See In re Sims*, 288 B.R. 264, 268 (Bankr. M.D.Ala. 2003); *see also* 8 COLLIER ON BANKRUPTCY ¶ 1305.02. Finally, Fed. R. Bankr. P. 3004 allows the debtor or trustee to file a

---

[2]Section 507(a)(8) is applicable to allowed *unsecured* claims of governmental units; the claim at issue here is a secured claim.

8

claim on a creditor's behalf, but only for thirty days after the time expires for the creditor to file. The right to file a claim on another's behalf is linked to the time limits for prepetition claims, and it appears that is what is contemplated by the rule. This claim is beyond that time.

The creditor might elect not to file a postpetition claim because it might consider that it is in its best interests not to file. With regard to postpetition taxes, Judge Lundin explains:

> Taxing authorities with claims that become payable while the Chapter 13 case is pending may have an option to seek administrative expense status under § 503(b)(1)(B) or characterization as a postpetition claim under § 1305(a)(1). ... Courts that treat administrative expenses as priority claims in Chapter 13 cases would require full payment of the postpetition tax under § 1322(a)(2) but without interest. By not filing a proof of claim, the holder of a postpetition tax claim under § 1305 can control the allowance and discharge of its claim and may be better positioned to demand postpetition interest.

4 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3ʳᵈ Ed. § 292.1.

If this claim were to be allowed, section 1322(a)(2) would then become applicable. Specifically, section 1322(a)(2) states the plan must provide for the full payment of all claims entitled to priority under section 507. Right now, the debtor's plan does not provide for payment to the city. Plan modification with notice to all creditors would be required.

Originally, the city objected to the debtor's filing of a claim on its behalf. The city's brief does not follow that path, but to disallow the claim is not inconsistent with its right to payment, which survives intact. The debtor has no right to file a claim on the city's behalf, thus limiting its choice of remedies. The trustee's objection is even better from a policy standpoint. Even though basic services are necessary for a debtor's performance under a plan, a debtor should not be allowed to incur postpetition debt for such services without the trustee's permission and contrary to statutes and the plan. The debtor claimed such expenses as nondisposable income when arriving at an amount to pay under the plan, and she should be paying them currently. The

9

debtor should not be allowed to take plan payments intended for creditors and to apply those funds for her personal expenses. This is the case even thought the debtor might have been wrong initially as to the real cost of those necessary expenses.

Accordingly, claim no. 6 is disallowed, without prejudice to the city. A separate order consistent with this decision will be entered.

October 3, 2005

Margaret Dee. McGarity
U.S. Bankruptcy Judge